UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| WILLIAM MONK,<br><br>    Plaintiff,<br><br>    v.<br><br>LOUIS DEJOY,<br><br>    Defendant. | Case No.  22-cv-03403-RMI<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 25 |

Now pending before the court is Defendant's Motion to Dismiss (dkt. 25). Plaintiff has responded (dkt. 29), Defendant has replied (dkt. 30), and the Parties appeared for oral argument on April 4, 2023 (dkt. 31). For the reasons stated herein, Defendant's motion is granted.

## BACKGROUND

The following is a recitation of the pertinent allegations from Plaintiff's Complaint. Plaintiff was first employed by the United States Postal Service ("USPS") in November 2014; sometime thereafter, he applied to be re-hired at the Post Office in Arcata, California, and he began working there on May 29, 2015. *See* Compl. (dkt. 1) at 3. He alleges that he informed the USPS from the outset that he suffers from Type 1 diabetes, and that he would need accommodations. *Id*. In October of 2015, Plaintiff alleges that he "was pressured to skip his lunch break during an eleven-hour shift" – in response, he provided the USPS with a note from his doctor (Nathan Copple) "about the medical necessity of taking breaks to manage his diabetes." *Id*. On a number of occasions in 2016 and 2017, Plaintiff was reportedly not permitted breaks or leaves of absence related to his illness. *Id*. at 3, 5-6. During this period, Plaintiff alleges (without much factual development) that his supervisors publicly discussed his diabetes – including "their

false beliefs about it" – such that "other employees would mock [Plaintiff] with impunity . . . [to the point that] a shared consensus appeared to develop in the office where all employees except [Plaintiff] believed that they knew more about [Plaintiff's] disability than either [Plaintiff] or [his] physician." *Id*. at 5-6.

Between 2017 and 2020, Plaintiff reportedly informed his managers that delays or denials related to his breaks were impacting his efforts to manage his diabetes. *Id*. at 6-7. In early June of 2018, Plaintiff requested an accommodation through the District Reasonable Accommodation Committee ("DRAC"). *Id*. at 7. On June 12, 2018, Plaintiff spoke with DRAC representative Daphne Smallwood who reportedly told him that "he would henceforth be allowed to use the common breakroom to inject insult, and that his other concerns would also be addressed." *Id*. Plaintiff alleges that his accommodations went into effect on August 6, 2018. *Id*. at 7, 8.

Plaintiff also alleges that the USPS retaliated against him for requesting formal disability accommodations immediately after the commencement of the interactive process when, in 2018, when one of his supervisors initiated two interviews with Plaintiff and accused him of filing for unauthorized overtime – he adds that his union steward "later showed that these false accusations resulted from the management's falsifying of timeclock entries." *Id*. at 7-8. The day after his accommodations became effective, he received a letter warning him about his failure to take his lunch break at the appropriate time – which, he contends referred to one of the two incidents related to the accusations of him filing for unauthorized overtime. *Id*. at 8. Plaintiff further alleges that a manager who publicly humiliated him for taking breaks "sometimes physically blocked him from leaving his workstation to medically manage his disability." *Id*. In short, Plaintiff states that after his accommodations were approved, his managers nevertheless continued to frustrate or deny his breaks, resulting in episodes of hypoglycemia and other complications. *Id*. at 8-9.

Plaintiff contends that, as a result of these and other refusals to honor his disability accommodations, a new interactive meeting became necessary, after which DRAC issued a new accommodation letter in October of 2018 that included a new accommodation which provided for "as much notice as possible" for any changes of schedule. *Id*. at 9. Notwithstanding the vagueness of the "as much notice as possible" language, Plaintiff states that in early 2019, his managers

2

"continued to refuse to giving (sic) [him] the two hours of notice of changes to his break times, travel times or duties (including assignment to afternoon dispatch) that [Plaintiff] had asked for repeatedly." *Id*. at 90. The Complaint does not make it clear why the "as much notice as possible" language of the second DRAC accommodation must be interpreted as "two hours."

In any event, on April 2, 2019, DRAC issued a third accommodation letter that included provisions for predictable break times, shift lengths, advance notice of schedule changes, and an area for Plaintiff to safely inject his medications. *Id*. at 9-10. On April 23, 2019, a DRAC representative (Lincoln Lau) informed Plaintiff that the most recent accommodation letter (from April 2, 2019) was no longer active because Plaintiff's physician had ostensibly not provided a medical rationale for the link between Plaintiff's diabetes and the need for a predictable and consistent schedule, also because the accommodation was incompatible with the "unpredictable nature of mail volume," and because of the "amount of time needed to complete mail processing tasks." *Id*. at 12. During this period, managers continued to perpetuate "a culture of harassment at work by publicly gossiping" about him which "gave tacit permission for other employees to do the same." *Id*. Plaintiff alleges that these events matured into bullying such that on one occasion – December 13, 2019 – he found himself shoved and elbowed by a colleague. *Id*. at 12. This caused Plaintiff to exclaim loudly, "please stop shoving me and elbowing me," which caused a commotion in the workplace. *Id*. at 12-13. The result of this unfortunate encounter was that management retaliated against him by having him escorted out of the workplace and "attempting to place him on a fourteen-day suspension, and threating to fire him," but that his punishment was later reduced to a three-day suspension. *Id*. at 12-13.

In March of 2020, and on the basis of a note from his doctor, Plaintiff stopped going to work because his immune system was reportedly compromised due to his diabetes and he believed that he occupied a high risk of hospitalization or death if he were to contract COVID-19. *Id*. at 14. "[A]fter exhausting his paid leave options, [Plaintiff] remained on unpaid leave for the remainder of the pandemic" because the USPS was never able to accommodate his request for other work to be found for him to do "at home or in a lower-risk environment than his usual place of work." *Id*. About 14 months after the date on which Plaintiff had last reported for duty, Plaintiff met with

3

DRAC representative Lincoln Lau; during and after that meeting, Plaintiff and his legal counsel asked for an updated letter detailing Plaintiff's "currently authorized reasonable accommodations of disability." *Id*. at 15. Plaintiff never received the "updated" letter he sought, which he claimed to need "in order to be psychologically prepared to return to work." *Id*. at 21. To be clear, the Complaint acknowledges that the "USPS agreed to grant [Plaintiff] accommodations [for] his disabilities on multiple occasions," but that the "USPS's refusal to provide [Plaintiff] with an updated written document outlining his [already] agreed disability accommodations . . . constituted retaliation against [him] for his protected activity of requesting and attempting to exercise disability accommodations." *Id*. at 25. Plaintiff's "continued absence from work during 2021 prompted Postmaster Steeves to send two letters, dated June 15, 2021[,] and June 30, 2021 [which] warned [Plaintiff] that the USPS considered him AWOL and threatened that unless [he] returned to work immediately, or provided justification for his continued absences, he would be terminated, removed for cause, or subject to other disciplinary actions." *Id*. at 16. Plaintiff alleges that his continued absence was rooted in the USPS's failure to give him the updated letter he sought, and that he "would have returned to work if he had received [the] letter." *Id*.

While Plaintiff's Complaint alleges that he was terminated on some unspecified date in July of 2021 (*see id*. at 25), the Final Agency Decision attached as an exhibit to the Complaint indicates that Plaintiff's employment was in fact terminated on August 5, 2021. *See* Compl., Exh. B (dkt. 1-2) at 4. There is no indication, in the Complaint, or elsewhere in the record, that Plaintiff ever returned to the Arcata Post Office between March of 2020 and the date of his ultimate termination in early August of 2021. To the contrary, Plaintiff confirms the fact that he never returned to work during that period, and that COVID-19 was not necessarily the reason (or at least, not the only reason). *See* Pl.'s Opp. (dkt. 29) at 2 (stating that Plaintiff "was in a state where attendance at work was very challenging to him due to the history of on-the-job disability discrimination and his perception that he would have no defense against additional discrimination if he did return to work."). Following his termination on August 5, 2021, Plaintiff filed suit in this court on June 9, 2022, pleading three causes of action: harassment based on disability and/or protected activity (*id*. at 19-22); denial of a reasonable accommodations of disability (*id*. at 22-24),

4

1  and retaliation for the protected activity of requesting reasonable accommodations of disability (*id.*
2  at 25-27).

## LEGAL STANDARDS

4  The currently-pending motion to dismiss (dkt. 25), filed under Fed. R. Civ. P. 12(b)(6), challenges the sufficiency of the allegations set forth in the FAC. In reviewing the sufficiency of a complaint, before the presentation of any evidence either by affidavit or admissions, the court's task is limited – the issue is not whether a plaintiff will ultimately prevail, instead the issue is whether a plaintiff is even entitled to offer evidence to support the claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Dismissal is proper when an operative complaint either fails to advance "a cognizable legal theory," or fails to allege "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In evaluating such motions, courts must: (1) construe the operative complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). However, courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Courts "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir. 1986), and therefore courts must not "assume that the [plaintiff] can prove facts that [he or she] has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *See Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

To survive dismissal under these standards, while complaints do not necessarily need to be hyper-detailed, they do need to contain enough relevant factual allegations such as to establish the grounds of a plaintiff's entitlement to relief – and, doing so "requires more than labels and

1  conclusions, and a formulaic recitation of the elements of a cause of action . . ." *Bell Atl. Corp. v.*
2  *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Nor does a complaint suffice if it
3  tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S.
4  662, 678 (2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 557). Under these standards, courts follow a
5  "two-prong approach" for addressing a motion to dismiss: (1) first, the tenet that a court must
6  accept as true all of the allegations contained in a complaint does not apply to legal conclusions,
7  threadbare recitals of the elements of a cause of action, or conclusory statements; and, (2) only a
8  complaint that states a *plausible* claim for relief survives a motion to dismiss. Plausibility is a
9  context-specific task that requires the reviewing court to draw on its judicial experience and
10 common sense; however, where the well-pleaded facts do not permit the court to infer more than
11 the mere *possibility* of misconduct, the complaint may have alleged, but it has failed to "show,"
12 "that the pleader is entitled to relief" as required by Fed. Rule Civ. Proc. 8(a)(2). *See generally*
13 *Iqbal*, 556 U.S. at 678-79.

14 In light of these principles, a court considering a motion to dismiss can choose to begin by
15 identifying allegations that, because they are no more than conclusions, are not entitled to the
16 assumption of truth. *Id*. at 679. While legal conclusions can provide the framework of a complaint,
17 they must be supported by well-pleaded factual allegations. *Id*. When a complaint does in fact
18 contain well-pleaded and factual allegations, courts will assume their veracity and then determine
19 whether they plausibly give rise to an entitlement to relief. *Id*. In short, for a complaint to survive a
20 motion to dismiss, the non-conclusory factual content, and reasonable inferences from that
21 content, must plausibly suggest a claim entitling the plaintiff to relief. *See Moss v. United States*
22 *Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009).

23 As to the nature of dismissals, leave to amend should be granted unless it becomes clear
24 that amendment would be futile because further amendments cannot remedy the defects in the
25 complaint. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal
26 without leave to amend is proper if it is clear that the complaint could not be saved by
27 amendment."); *see also Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th
28 Cir. 2005); *California ex rel. California Department of Toxic Substances Control v. Neville*

6

*Chemical Co.*, 358 F.3d 661, 673 (9th Cir. 2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile.") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION

In his first claim – harassment based on disability and/or protected activity – Plaintiff contends that he suffered: taunts accusing him of being stupid, lazy, dishonest, and slow; homophobic slurs; the termination of a subset of his agreed-upon accommodations based on purportedly false claims that his supporting medical documentation was inadequate and lacked justification; and, the USPS's refusal to provide the updated letter outlining his agreed-upon disability accommodations. *See* Compl. (dkt. 1) at 19-20. Defendant moves for dismissal of this claim on two grounds: first, that harassment claims are not actionable under the Rehabilitation Act (29 U.S. § 791); and second, that Plaintiff has failed to exhaust his administrative remedies. *See* Def.'s Mot. (dkt. 25) at 5-7.

Both the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 prohibit discrimination against an otherwise qualified individual based on his or her disability. *See Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). The Rehabilitation Act is the predecessor of the ADA and applies to federal employees. *See Pena v. United States Postal Serv.*, No. 18-cv-03923-JCS, 2019 U.S. Dist. LEXIS 24521, at *15-16 (N.D. Cal. Feb. 14, 2019). The ADA's "standards of substantive liability are incorporated in the Rehabilitation Act," (see *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007)); furthermore, Title VII precedent is generally called upon to interpret ADA claims. *See Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 859 (9th Cir. 2016) (collecting cases). Claims for disparate treatment and refusal to make a reasonable accommodation are both actionable under the Rehabilitation Act. *See Pena*, 2019 U.S. Dist. LEXIS 24521, at *15-16; *see also Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)). Persons alleging employment discrimination under the Rehabilitation Act are, of course, subject to the same administrative exhaustion requirements as those applicable in the Title VII remedial scheme. *See Vinieratos v. U.S. Dep't of Air Force ex rel. Aldridge*, 939 F.2d 762, 773 (9th Cir. 1991).

While the Court of Appeals for the Ninth Circuit has yet to expressly recognize harassment

claims under the Rehabilitation Act or Americans with Disabilities Act,[1] some district courts have recognized such a claim based on analogous Title VII analysis. *See Elton v. McDonough*, No. 1:19-cv-01723-, 2021 U.S. Dist. LEXIS 106442, at *22 (E.D. Cal. June 7, 2021) (collecting cases). The undersigned finds those authorities to be persuasive and sees no reason to deviate from that approach. Accordingly, for present purposes, the undersigned will assume, without deciding, that such a claim could theoretically be brought under the Rehabilitation Act.

In this regard, an employer would be liable "for conduct giving rise to a hostile environment where the employee proves (1) that he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Silveria v. McDonough*, No. 20-17457, 2022 U.S. App. LEXIS 1631, at *1-*2 (citing *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1206 (9th Cir. 2016)). Courts determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and, whether it unreasonably interferes with an employee's work performance. *See Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1109-10 (9th Cir. 2000). The conduct must be sufficiently extreme as to amount to a change in the terms and conditions of employment. *Arizona ex rel. Horne*, 816 F.3d at 1206; *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (describing a hostile work environment as a workplace permeated with discriminatory intimidation, ridicule, and insult).

Here, while Plaintiff has complained of taunts, slurs, the termination of some of his agreed-upon accommodations (based on a difference of opinion about medical documentation), and about the USPS's refusal to provide the updated letter he requested – only the taunts and slurs can be construed as constituting "verbal or physical conduct of a harassing nature" as contemplated by the authorities set forth above. The alleged termination of the subset of his accommodations based

---

[1] *See e.g., Silveria v. McDonough*, No. 20-17457, 2022 U.S. App. LEXIS 1631, at *2 n.1 (9th Cir. Jan. 20, 2022) ("We assume without deciding that such a claim can be brought under the Rehabilitation Act when the hostile work environment is based on a disability.").

8

1  on a difference of opinion about medical justification, and the alleged refusal to provide the
2  updated letter (to which he has shown no entitlement, as discussed below) are neither severe, nor
3  threatening, nor objectively humiliating, nor can they be construed to constitute even merely
4  offensive utterances. Accordingly, the present analysis should only focus on the alleged taunts,
5  slurs, and other similar conduct of a harassing nature.
6    More importantly, it should also be noted that "[i]n order to bring a claim under the
7  Rehabilitation Act, a federal employee must exhaust available administrative remedies." *See*
8  *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th Cir. 2003). In this regard, federal regulations
9  require that those "aggrieved persons who believe they have been discriminated against on the
10 basis of . . . handicap must consult [an EEOC] Counselor prior to filing a complaint in order to try
11 to informally resolve the matter." *Cherosky*, 330 F.3d at 1245 (citing 29 C.F.R. § 1614.105(a)).
12 That consultation must occur "within 45 days of the date of the matter alleged to be discriminatory
13 or, in the case of personnel action, within 45 days of the effective date of the action." *See id*. at §
14 1614.105(a)(1). "Failure to comply with that regulation is 'fatal to a federal employee's
15 discrimination claim.'" *Cherosky*, 330 F.3d at 1245 (quoting *Lyons v. England*, 307 F.3d 1092,
16 1105 (9th Cir. 2002)). Lastly, it should be noted that, in *National Railway Passenger Corp. v.*
17 *Morgan*, 536 U.S. 101, 122-27 (2002), the Supreme court clarified the notion that claims of this
18 sort, when based on discrete acts, are only timely where *the acts* occurred within the 45-day
19 limitations period; and, that claims based on a hostile environment theory are only timely where at
20 least one act occurred during the limitations period. Accordingly, the primary issue at hand is
21 whether or not Plaintiff's claims have been properly exhausted through a timely consultation.
22   While Plaintiff's Complaint does not allege when he contacted an EEO counselor to
23 initiate the required informal counseling about the alleged harassment at bar, the Final Agency
24 Decision (included as an attachment to the Complaint) indicates that Plaintiff initiated the informal
25 counseling on August 26, 2021. *See* Compl., Exh. B (Dkt. 1-2) at 3 ("The record revealed the
26 complainant requested pre-complaint counseling in the instant case on August 26, 2021."). Thus,
27 the required informal counseling occurred substantially beyond the expiration of the 45-day
28 window for the harassment alleged in Plaintiff's Complaint (all of which acts were alleged to have

occurred between 2017 and early 2020). In fact, Plaintiff's Complaint, and, his other papers, make clear that he was never even present at his workplace after March of 2020. Plaintiff has not articulated any reason for failing to timely initiate the required EEOC counseling; indeed, the attachments to his Complaint make it clear that: (1) "the EEO poster is appropriately displayed at his former facility"; and, (2) because "[he] has engaged in prior EEO activity [he] is deemed to have constructive knowledge of the EEO complaint process and the applicable time periods for filing claims." *See id*. at 4.

This 45-day requirement is considered, in the context of Rule 12(b)(6) analysis, as a condition precedent to suit; thus, like a statute of limitations, it is "subject to waiver, estoppel, and equitable tolling," or in the alternative, it can be "fatal to a federal employee's discrimination claim in federal court." *Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043-44 (9th Cir. 2009). Here, because Plaintiff has not argued that waiver, estoppel, or equitable tolling applies to excuse his failure to comply with § 1614.105, the question as to whether Claim-1 has been exhausted solely depends on whether or not he initiated contact with a Counselor within 45 days of the date of each matter alleged to be discriminatory. *See* 29 C.F.R. § 1614.105(a)(1). During oral argument, Plaintiff's counsel merely noted that his termination (August 5, 2021) took place within the 45-day window; however, for the reasons explained above, that argument is unavailing because Plaintiff's allegations of harassment (the allegations of taunts, slurs, and other harassing conduct) transpired many months outside the relevant 45-day window for the required EEOC counseling. Because those complaints cannot be raised for the first time in a federal complaint absent proper exhaustion of the agency's EEO process, and because this defect cannot be cured by amendment, Claim-1 is **DISMISSED without leave to amend**.

In his second claim – denial of reasonable accommodations of disability – Plaintiff does not actually state a case about a denial of reasonable accommodations; instead, he merely repeats his discontentment with the USPS's refusal to provide him with the updated letter he requested. *See* Compl. (dkt. 1) at 23-24, ¶¶ 80-88; *see also* Pl.'s Opp. (dkt. 29) at 6-7 (same).

To state a claim for failure to accommodate a disability, Plaintiff must show that: (1) he is disabled; (2) that he is a qualified individual; and (3) that a reasonable accommodation is possible.

*See Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir.1999). A "reasonable accommodation" is defined as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). In other words, "[r]easonable accommodations are mechanisms to remove barriers and provide assistance to disabled individuals so that they can perform the 'essential functions' of employment positions." *Cripe v. City of San Jose*, 261 F.3d 877, 889 (9th Cir. 2001). However, employers are not required to make such accommodations, including granting a leave of absence, if doing so would pose an undue hardship. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 n.14 (9th Cir. 2001). Working at home might be considered a reasonable accommodation under circumstances where the essential functions of the position can be performed at home and a work-at-home arrangement would not cause an undue hardship for the employer. *See id*. at 1138 n.16. At the pleading stage, a plaintiff must, at a minimum, "describe the requested accommodation and allege when and to whom it was made." *See Abdul-Haqq v. Kaiser Found. Hosps.*, No. C 14-4140 PJH, 2015 U.S. Dist. LEXIS 8768, at *7-8 (N.D. Cal. Jan. 23, 2015). Further, a plaintiff must also identify how a requested accommodation would have enabled him to perform the essential functions of his job. *See Tazma Diwali Anaya v. Marin Cnty. Sheriff*, No. 13-cv-04090-WHO, 2014 U.S. Dist. LEXIS 164264, at *31-33 (N.D. Cal. Nov. 24, 2014). Plaintiff has not satisfied these standards; and, for the reasons stated below, it appears that granting him leave to amend would be futile.

At the outset, the court will note that Plaintiff's Complaint does not establish him as a "qualified individual" – and, in order to bring a claim pursuant to the Rehabilitation Act, it is necessary to allege that, with or without reasonable accommodation, one can perform the essential functions of the employment position that such individual holds or desires. *See Bates v. UPS*, 511 F.3d 974, 989 (9th Cir. 2007) (quoting 42 U.S.C. § 12111(8)). The "essential functions" of a job are defined as its fundamental duties, including its marginal functions. *Id*. In Plaintiff's case, reporting for duty at the post office is the most fundamental function that a USPS employee must be able to perform with or without a reasonable accommodation. "Except in the unusual case

11

where an employee can effectively perform all work-related duties at home, an employee 'who does not come to work cannot perform any of his job functions, essential or otherwise.'" *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1239 (9th Cir. 2012) (quoting *EEOC v. Yellow Freight Sys.*, 253 F.3d 943, 948 (7th Cir. 2001)); *see also EEOC v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (same); *see also Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122-24 (10th Cir. 2004) (same); *see also Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 213 (4th Cir. 1994) (same). It should also not go without mention that, "for good reason: 'most jobs require the kind of teamwork, personal interaction, and supervision that simply cannot be had in a home office situation.'" *Ford Motor Co.*, 782 F.3d at 761 (quoting *Rauen v. U.S. Tobacco Mfg. L.P.*, 319 F.3d 891, 896 (7th Cir. 2003)); *see also Pegram v. Brennan*, No. 19-cv-02528-JSC, 2021 U.S. Dist. LEXIS 241795, at *27 (N.D. Cal. Dec. 17, 2021) (explaining that attendance is an essential function of being a USPS employee).

By his own admission, for a 17-month period (between early March of 2020, and his termination on August 5, 2021) Plaintiff failed to report for duty at his place of employment. As Defendant points out, "[t]his period includes four months after the May 4, 2021 meeting where USPS agreed to provide the reasonable accommodations that Plaintiff sought [and, therefore,] Plaintiff's failure to appear for work during this period demonstrated that Plaintiff was unable to perform the essential functions of his position even after USPS offered accommodations, which accordingly absolved USPS of the need to provide any further accommodation." *See* Def.'s Mot. (dkt. 25) at 9.

"Both before and since the passage of the ADA, a majority of circuits have endorsed the proposition that in those jobs where performance requires attendance at the job, irregular attendance compromises essential job functions. Attendance may be necessary for a variety of reasons. Sometimes, it is required simply because the employee must work as 'part of a team.'" *Samper*, 675 F.3d at 1237-38 (citing *Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998). As the *Samper* court noted, other types of employment require face-to-face interaction with clients and other employees. *Id*. at 1237 (citing *Nowak v. St. Rita High Sch.*, 142 F.3d 999 (7th Cir. 1998) (teacher); *Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442 (8th Cir. 1998) (airline

12

customer service agent); *Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209 (4th Cir. 1994) (teacher)). Other jobs may require the employee to work with certain items, equipment, or materials that are on-site, or to otherwise perform functions that simply cannot be performed off-site. *Samper*, 675 F.3d at 1237-38 (citing *Yellow Freight Sys., Inc.*, 253 F.3d 943 (7th Cir. 2001) (*en banc*) (dockworker); *Jovanovic v. In-Sink-Erator*, 201 F.3d 894 (7th Cir. 2000) (tool and die maker); Waggoner v. Olin Corp., 169 F.3d 481, 481-82 (7th Cir. 1999) (production worker); *Corder v. Lucent Techs., Inc.*, 162 F.3d 924 (7th Cir. 1998) (telephone customer support); *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191 (4th Cir. 1997) (computer consultant); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755 (5th Cir. 1996) (mechanic); *Jackson v. Veterans Admin.*, 22 F.3d 277 (11th Cir. 1994) (housekeeper); *Carr v. Reno*, 23 F.3d 525, 306 U.S. App. D.C. 217 (D.C. Cir. 1994) (coding clerk under the Rehabilitation Act); *Law v. U.S. Postal Serv.*, 852 F.2d 1278 (Fed. Cir. 1988) (mail handler under the Rehabilitation Act). In short, in a job like Plaintiff's – one that required on-site and in-person work – "performance is predicated on [] attendance; [and] reliable, dependable performance requires reliable and dependable attendance." *Samper*, 675 F.3d at 1241. As was the case in *Samper*, Plaintiff's failure to show up for work (following the expiration of his allotment of authorized paid and unpaid leave) rendered him otherwise unqualified for the position he occupied. In and of itself, this must result in the dismissal of his reasonable accommodation claim.

Quite apart from rendering himself unqualified for his position by failing to report to work for months after the expiration of his allotment of authorized leave, Plaintiff's Complaint does not actually allege that the USPS refused to provide any reasonable accommodation. Instead, the Complaint alleges that Plaintiff requested "updated written documentation" of previously-granted and already-memorialized accommodations at a meeting on May 4, 2021, and the gist of this claim is focused on the USPS's failure to produce the updated written documentation that Plaintiff demanded. *See* Compl. (dkt. 1) at 22-24. However, as Defendant points out (*see* Def.'s Mot. (dkt. 25) at 10) Plaintiff has provided no authority (nor has the court found any) to support the contention that delay, or refusal, in providing such updated written documentation of an agreed-upon accommodation, itself, constitutes a failure to provide a reasonable accommodation. *See generally* Pl.'s Opp (dkt. 29) at 1-8). Because the central element of a claim such as this is that an

13

employer's actual failure to provide the accommodation, and because the Complaint alleges quite the opposite – Plaintiff has failed to state a claim for relief on this account as well.

Then there is also the fact that Plaintiff has not exhausted the required administrative remedy. As stated above, Plaintiff was required to initiate informal EEO counseling within 45 days of the allegedly offending behavior in order to bring this claim. *See Cherosky*, 330 F.3d at 1245 (citing 29 C.F.R. § 1614.105(a)(1)); *see also Lyons*, 307 F.3d at 1105. Because the 45-day period for events occurring on May 4, 2021 expired on June 18, 2021, and because the Complaint does not allege that Plaintiff initiated the required informal counseling by that date – even if Plaintiff had stated a cognizable claim for relief (which is not the case), the claim would have been barred for failure to exhaust administrative remedies anyway. For these reasons, and because it is clear that these defects cannot be cured by amendment, Claim-2 is **DISMISSED with prejudice**.

In his third claim Plaintiff pleads a claim of retaliation for having requested a reasonable accommodation of disability. *See* Compl. (Dkt. 1) at 25-27. Therein, he essentially only alleges that: (1) he suffers from diabetes; (2) that the USPS agreed to grant him accommodations on multiple occasions, "including at his meeting with [DRAC] Representative Lincoln Lau [] on May 4, 2021; and, that his only gripe is that "USPS's refusal to provide [him] with an updated written document outlining his agreed disability accommodations . . . constituted retaliation against [him] for his protected activity of requesting and attempting to exercise disability accommodations." *See id*. at ¶ 93. According to Plaintiff, the USPS's refusal to memorialize the agreed-upon accommodations in the form of an "updated written document" constituted "retaliation" because it "had the intended effect of placing [him] in a state of reasonable apprehension relating to going to work, causing [him] to suffer severe emotional harm in the form of intense apprehension, rising to the level of severe terror, regarding the likely treatment he would receive from co-workers if he attempted to return to work without the written documentation of his disability accommodations." *See id*. at ¶ 95. Plaintiff concludes by asserting that the USPS's failure (at the meeting on May 4, 2021) to provide the "updated written document" he had requested, "is the direct cause of the termination of [his] employment [on August 5, 2021.]" *See id*. at ¶ 97.

To establish a *prima facie* case of retaliation, a plaintiff must show: (1) that he engaged in

14

protected activity; (2) that he suffered a materially adverse employment action; and, (3) that there exists a causal connection between the protected activity and the adverse employment action. *See Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 849 (9th Cir. 2004) (ADA case); *see also Fleming v. Yuma Reg'l Med. Ctr.*, 587 F.3d 938, 939 (9th Cir. 2009); see also *Campbell v. Brennan*, No. 15-cv-03582-JSC, 2018 U.S. Dist. LEXIS 14944, at *25-26 (N.D. Cal. Jan. 30, 2018) (Rehabilitation Act case) (citing *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (adopting Title VII's framework for ADA retaliation claims)). The "standard for the 'causal link' is but-for causation." *See T.B. ex rel. Brenneise*, 806 F.3d at 473.

Far from establishing but-for causation, as to the link between his request for accommodations (which he claims was granted) and his subsequent termination on August 5, 2021 (following his protracted period away from his workplace without leave), Plaintiff has made two assertions: first, that the USPS's failure to provide him the updated letter he wanted was "retaliatory" to begin with; and, second, that the failure to provide the letter was "the direct cause" of the termination of his employment. These assertions are exactly the type of "conclusory, unwarranted deductions of fact or unreasonable inferences" that the court must disregard in analyzing a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Plaintiff's third claim, therefore, must be dismissed for two reasons. First, as described above, Plaintiff failed to exhaust the required administrative remedy. Plaintiff contends that he was denied the updated written documentation he wanted at a meeting with Lincoln Lau on May 4, 2021. He was therefore required to initiate the informal EEO counseling related to the USPS's May 4, 2021, refusal to give him the updated letter he wanted no later than June 19, 2021 (45 days later). As mentioned above, Plaintiff initiated the informal counseling on August 26, 2021. *See* Compl., Exh. B (Dkt. 1-2) at 3 ("The record revealed the complainant requested pre-complaint counseling in the instant case on August 26, 2021."). To the extent that Plaintiff contends that the USPS's failure to provide him this updated written letter between May 4, 2021, and his termination on August 5, 2021, constituted a continuing and ongoing event of nonstop

15

"retaliation" (*see id.* at ¶ 93), the court will disregard that assertion because it too is an unwarranted deduction (*see Sprewell*, 266 F.3d at 988.). The denial of which Plaintiff complains (if such can reasonably be assumed to be retaliatory at all) was a discreet event that happened on May 4, 2021, when Plaintiff requested the letter and did not receive it. Plaintiff cannot be said to have exhausted the administrative remedy for this claim either – which is similarly fatal to his ability to pleat it in this court in the first instance. Thus, because Plaintiff failed to timely pursue his administrative remedy "within 45 days of the date of the matter alleged to be [retaliatory]" (*see* 29 C.F.R. § 1614.105(a)(1)), his "[f]ailure to comply with that regulation [must be deemed] 'fatal to [his] [retaliation] claim.'" *Cherosky*, 330 F.3d at 1245 (quoting *Lyons v. England*, 307 F.3d at 1105).

Furthermore, once stripped of its conclusory content, its unwarranted deductions, and its unreasonable inferences, Claim-3 neither pleads any cognizable retaliatory act nor any causal nexus to his termination. For the court to deem the USPS's failure to provide Plaintiff with the updated letter he wanted, there must be some authority entitling him to such a letter. There is not. All that Plaintiff has provided was to assert during oral argument – once again, in conclusory fashion – that the purposes of the Rehabilitation Act would be frustrated by giving employees verbal descriptions of their agreed upon disability accommodations. Even assuming that such an assertion is correct – that would merely constitute a legislative oversight by Congress rather than an affirmative act of retaliation by a blameless employer who is under no duty to conjure up a more prudential version of a statute or to impose upon itself statutory duties that do not exist. Thus, the failure to provide the updated letter – when no duty existed to provide one – cannot be reasonably interpreted as a retaliatory act at all. Second, even if one were able to interpret the refusal to provide that updated letter as some form of retaliation, Plaintiff has failed to plead any causal link between the alleged protected activity and the alleged adverse action.  Even assuming that Plaintiff's termination was the actionable adverse action, Claim-3 would still fail for two reasons. First, as mentioned above, the court cannot accept Plaintiff's unwarranted deduction to the effect that the refusal to give him his updated letter memorializing his agreed upon accommodations was the "direct cause" of his termination – rather than his absenteeism – simply

1  because he claims that he feared returning to work without it. Second, as noted by Defendant, "any
2  supposed causal connection was broken by the postmaster letters in June 2021 warning Plaintiff
3  that he would be considered AWOL after not showing up to work for over a year." *See* Def.'s
4  Mot. (dkt. 25) at 11 (citing Compl. ¶ 56; and *Ghirmai v. Nw. Airlines, Inc.*, 131 F. App'x 609, 611
5  (9th Cir. 2005) (retaliation claim must be dismissed where "intervening events" "break the causal
6  connection")). Thus, for these reasons, and because it is clear that granting leave to amend would
7  be futile, Claim-3 is **DISMISSED without leave to amend.**

## CONCLUSION

For the reasons stated herein, Defendant's request (*see* dkt. 25 at 2) for an order dismissing Plaintiff's Complaint (dkt. 1) in its entirety with prejudice is **GRANTED**. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: April 10, 2023

_____
ROBERT M. ILLMAN
United States Magistrate Judge